UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALBERT R. GARCIA, ) | CV-N-06-0118-JCM (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| NEVADA BOARD OF PRISON ) | |
| COMMISSIONERS, ET AL., ) | |
| Defendants. ) | July 6, 2006 |

This Report and Recommendation is made to the Honorable James C. Mahan, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for temporary restraining order and/or preliminary injunction (#6). Plaintiff filed a supplement (#7), defendants opposed (#15), and plaintiff replied (#27).

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Albert R. Garcia ("plaintiff") is a prisoner at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#1). Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Fifth and Fourteenth Amendment due process rights, his First Amendment right to be free from retaliation, and his Eighth Amendment right against cruel and unusual punishment. *Id.* Plaintiff names as defendants Nevada Board of Parole Commissioners;[1] parole commissioners Dorla

---

[1] The court dismissed the Nevada Board of Prison Commissioners, which is actually the Nevada Board of Parole Commissioners, because the entity is not subject to suit under § 1983 (#9).

Salling, John Morrow, Thomas Goodson, and Connie Bisbee; case workers Patricia McGaffin and Danielle Iratcabal; NNCC psychologist Mary Stewart; the NDOC psychological panel; A.T. Vogt; correctional officers Kenneth Corzine, Travis Neighbors, Edmond Mason, Michael Thalman, Daniel Hensen, Paul Lessard, S. Church, and Michael Bashor; warden Don Helling; associate warden James Benedetti; investigator Rod Moore; Jeffrey Wiley; James Welch; Mary Babbs; NNCC law library supervisor William Curry; NDOC medical director Ted D'Amico; and Does 1-11. *Id.*

The court dismissed several of plaintiff's claims.[2] Of the remaining claims, in count I plaintiff asserts that the state parole board denied him due process in violation of his Fifth and Fourteenth Amendment rights. *Id*. Plaintiff alleges that he was wrongfully required to secure a mental health certification ("certification") prior to his most recent parole board hearing in January 2005. *Id*.

In count III, plaintiff contends that defendants Dr. D'Amico and Bashor acted with deliberate indifference to plaintiff's serious medical need in violation of the Eighth Amendment with respect to his suffering a central retinal vein occlusion and losing sight in his right eye. *Id*. Plaintiff claims that defendants delayed in seeking medical treatment for him. *Id*.

Count IV alleges that plaintiff was denied due process in violation of the Fourteenth Amendment when he was moved to "lock up" confinement for possessing contraband items in his cell. *Id.* Plaintiff also claims that disciplinary proceedings were brought against him in retaliation for his failure to cooperate in the investigation of a prison staff member. *Id*. In count V, plaintiff claims that he was placed in a "lock down" unit without any disciplinary hearing. *Id*. Plaintiff also contends that he was investigated for improperly corresponding with a program

---

[2] Plaintiff's complaint set forth ten counts (#1). The court dismissed counts II, VI, VII, IX, X with leave to amend (#9).

2

1  volunteer and claims that the investigation arose from the improper confiscation and reading of
2  his incoming personal mail. *Id*.

3  Finally, in count VIII, plaintiff alleges that he was placed in austere housing in connection
4  with retaliatory disciplinary proceedings. *Id*. Plaintiff claims that the disciplinary proceedings,
5  brought for his alleged romantic relationship with a volunteer at the prison and other violations
6  including unauthorized use of the telephone, mail, computer, and state equipment, were launched
7  after his personal mail was improperly read. *Id*. Plaintiff also asserts that he did not receive a fair
8  hearing. *Id.*

9  Plaintiff moves for a temporary restraining order and/or a preliminary injunction (#6).
10 Plaintiff seeks injunctive relief requiring the return of several items that he possessed that
11 apparently were confiscated. *Id*. at 16. Additionally, plaintiff asks that certain legal papers
12 belonging to him be returned, that he be allowed to buy a typewriter and legal supplies, that he
13 have more access to the law library, that he be removed from austere housing, that correctional
14 officers be prohibited from searching his cell except pursuant to procedures he outlines, and that
15 he not be transferred during this litigation (#6).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Preliminary injunction**

To warrant preliminary injunctive relief in the Ninth Circuit, the petitioner must demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003). Preliminary injunctive relief is designed to "preserve the status quo and

1  prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits."

2  *Lebron v. Comm'n John Armstrong*, 289 F. Supp.2d 56, 61 (D. Conn. 2003) (citation and internal

3  quotations omitted).  To prevail on a motion for preliminary injunction, the court must first

4  inquire whether plaintiff's constitutional claims will likely prevail on the merits.  *Luckette v.

5  Lewis*,  883 F. Supp. 471, 475 (D. Ariz. 1995).

6  

7      A prohibitory injunction preserves the status quo while litigation is pending, while a

8  mandatory injunction provides preliminary relief well beyond maintaining that status quo.

9  *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994).  Mandatory

10 preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the

11 facts and law clearly favor the moving party.'"  *Id*. (quoting *Martinez v. Matthews*, 544 F.2d

12 1233, 1243 (5th Cir. 1976).

13 

14     **2.  Temporary restraining order**

15     The standard for issuing a temporary restraining order is identical to the standard for

16 preliminary injunction.  *Brown Jordan Intern., Inc., v. Mind's Eye*, 236 F. Supp.2d 1152, 1154

17 (D. Haw. 2002).  Moreover, it is appropriate to treat a non-ex parte motion for a temporary

18 restraining order and preliminary injunction as a motion for a preliminary injunction.  *See* 11A

19 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIV. 2d § 2951, at 254 (2d.

20 ed. 1995) ("When the opposing party actually receives notice of the application for a restraining

21 order, the procedure that is followed does not differ functionally from that on an application for

22 a preliminary injunction and the proceeding is not subject to any special requirements.").

23 

24     **3.  Due process and parole hearing**

25     The United States Supreme Court has held that "[t]here is no constitutional right of a

26 convicted person to be conditionally released before the expiration of a valid sentence."

27 

28 

4

*Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979). Thus, an inmate does not have a liberty interest in being paroled. Id. In Nevada, the availability of parole exists only through the grace of the Nevada Parole Commission. *See* NRS 213.10705. The conditions permitting parole are subjective. The terms and conditions imposed before an inmate qualifies for a parole hearing are more objective. *See* NRS 213.120 and 213.1214.

NRS 213.1214 sets out the requirements for certification by a panel of mental health professionals ("psyche panel"). The statute requires that the psyche panel certify that any prisoner convicted of any of 15 enumerated sex or sex-related offenses has been "under observation while confined in an institution of the Department of Corrections and does not represent a high risk to reoffend based upon a currently accepted standard of assessment." *Id*. § 1. The statute specifically states that the panel may revoke certification at any time, that the statute does not create a right to be certified or to continue to be certified, and that no prisoner may bring a cause of action against the state for not certifying a prisoner or for refusing to place a prisoner before a panel for certification. NRS 213.1214(4); *see also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

**4. Due process and disciplinary proceedings**

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected liberty interest is at stake. *See Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1995). Liberty interests can arise both from the Constitution and from state law. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). When deciding whether the Constitution itself protects an alleged liberty interest of a prisoner, the court should consider whether the practice or sanction in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

5

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974); *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997). Prison officials must make individualized determinations to limit the calling of witnesses, *see Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996), and must eventually explain their reasons for so limiting the prisoner's ability to defend her or himself, *see Ponte v. Real*, 471 U.S. 491, 497 (1985).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Toussaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991). Prisoners have no automatic right to counsel in prison disciplinary hearings, but if the inmate is illiterate, the issues are complex, or the prisoner is unable to gather evidence, the prisoner must be provided with some legal assistance. *See Vitek v. Jones*, 445 U.S. 480, 495-96 (1980).

**5. Deliberate indifference and sufficiently serious harm**

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). In *Farmer v. Brennan*, 511 U.S. 825 (1994) the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim. *Farmer*, 511 U.S. at 828. The court once again stated that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the

Eighth Amendment." *Farmer*, 511 U.S. at 828, *citing Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle*, 429 U.S. 97. To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard -- that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard -- deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991); *see also Farmer*, 511 U.S. at 834.

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.*

"[D]eliberate indifference to a prisoner's serious illness or injury" is a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Estelle*, 429 U.S. at 105. In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference. *Id*. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Prison medical staff does not violate

7

the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 6. Retaliation

"[T]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). Prison authorities may not penalize or retaliate against an inmate for exercising the right to meaningful access to the courts. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials may be sued under § 1983 for retaliating against a prisoner for exercising his or her constitutional rights. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9thCir. 2003). To establish a prima facie case of retaliation under § 1983, the inmate-plaintiff must allege: (1) that he or she was retaliated against for exercising a constitutional right, and (2) that the alleged retaliatory action did not advance legitimate penological goals, such as preserving order and discipline. *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Such claims must be evaluated in light of the deference that must be accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Id*. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806. Finally, the inmate must demonstrate that the defendants' actions caused him actual injury. *See Resnick v. Hayes*, 213 F.3d 443, 439 (9th Cir. 2000).

### B. Analysis

Plaintiff sets forth no legal argument in his motion (*See* #6). Even construing this *pro se* plaintiff's pleadings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and considering the legal arguments he purports to raise in his supplement and in his reply (#7, 27), plaintiff has

8

not demonstrated that injunctive relief is warranted. *See Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1332 (9th Cir. 1981) (improper to raise new issues in a reply brief because opposing party has no opportunity to respond); *White v. City of Sparks*, 341 F.Supp.2d 1129, 1134 (D. Nev. 2004).[3]

**1. Due process and retaliation**

Plaintiff argues that his due process rights have been violated by the parole board improperly requiring that plaintiff obtain another certification when he was already certified (#1, 6). Apparently, plaintiff seeks an injunction granting him a new parole hearing. *Id*. Defendants emphasize that plaintiff has not even alleged that he will likely succeed on the merits regarding a new parole hearing nor has he alleged that he will be irreparably harmed (#15). Defendants point to the section of the certification statute that states that "[t]his section does not create a right in any prisoner to be certified or to continue to be certified." NRS 213.1214.

While plaintiff apparently was certified at an earlier time, the statute states that a prisoner does not have the right to continue to be certified. *Id.* It is unclear whether the statute indicates that certification may be revoked, or that the parole board may request that an inmate who was certified for an earlier parole hearing be certified again for a subsequent hearing. Plaintiff offers no argument as to why injunctive relief in the form of granting a new parole hearing is appropriate (*See* #6, 7, 27). Thus, the court can find no basis to grant the disfavored remedy of a mandatory injunction. Accordingly, injunctive relief with respect to a new parole hearing is denied.

With respect to the disciplinary proceedings, plaintiff argues that the charges were brought against him in retaliation for his refusal to cooperate in the investigation of a prison official (#1, 6). Plaintiff seeks to be removed from austere housing. *Id*. Related to austere

---

[3]Moreover, defendants have not had an opportunity to respond to plaintiff's supplement to his motion.

9

housing, plaintiff seeks access to legal supplies and a typewriter, more access to the law library, the return of certain legal papers allegedly taken from his cell, and that correctional officers be prohibited from searching his cell, except pursuant to certain procedures plaintiff outlines, including videotaping the search. *Id*.

Defendants argue that plaintiff received a fair disciplinary hearing that was properly held after plaintiff was served with a notice of charges for unauthorized or inappropriate use of telephone, mail, computer, state equipment, or supplies, as well as unauthorized contact, including harassment of any on-duty or off-duty correctional employee or other private citizen (#15).

Defendants provide the affidavit of Warden Helling, in which he states that plaintiff was served with a notice of charges on December 29, 2005 and was found guilty of the charges at a disciplinary hearing on January 30, 2006 (#15, Ex. E). Helling attests that plaintiff was not placed in lock up prior to his hearing, but was merely given a "level reduction" within the same medium-security housing classification. *Id*. Helling explains that he changed the sanction of 365 days disciplinary segregation to 365 days of "austere housing," a lesser sanction, because NNCC does not have a disciplinary segregation unit and plaintiff's medical condition requires that he remain at NNCC. *Id*. Helling states that he subsequently reduced the sanction to 180 days of austere housing based on Institutional Procedure 5.12. *Id*. Helling states that plaintiff's disciplinary appeal was denied. *Id*. Finally, Helling states that the only circumstance in which he removes himself from the disciplinary proceedings arises when Mr. Helling himself writes the notice of charges. *Id*. Helling denies plaintiff's claim that he said he wanted plaintiff's "ass buried." *Id*.

10

The notice of charges states that the inspector general closed the criminal investigation of a member of the medical staff, but found enough evidence that plaintiff had a romantic relationship with a volunteer to issue a notice of charges (#15, DEF 773).[4] Additionally, evidence submitted *in camera* shows a substantial basis for the disciplinary charges.[5] Thus, plaintiff has not demonstrated the absence of legitimate correctional goals for the alleged retaliatory action. *Pratt*, 65 F.3d at 806.

Plaintiff also appears to argue that he is being denied legal supplies and a typewriter while in austere housing. However, plaintiff also provides the response to an inmate request form that he submitted indicating that he was informed that he can still order legal supplies while on canteen restriction (#7 at 14). Defendant Benedetti states in his affidavit that another inmate was allowed to keep his word processor in austere housing only because that inmate had a court order specifically directing that he be permitted to keep his word processor during the pendency of his *habeas corpus* appeal (#15, Ex. B).

Plaintiff seeks physical access to the law library (#6). Plaintiff complains that he has dialysis Monday, Wednesday, and Friday during the time the law clerks visit the unit, yet plaintiff also acknowledges that inmate law clerks are accessible Monday through Friday from 8 a.m. to 11 a.m. (#7). Plaintiff asserts that he has to know the exact citation in order to request books, that the law clerks do not know how to shepardize or conduct legal research, and that he has waited

---

[4] The staff member was investigated for aiding or facilitating plaintiff's relationship with an outside volunteer (#15, DEF 773).

[5] Defendants submitted materials under seal for the court's *in camera* review (#16, 17, 18, 19). Plaintiff objected to the submissions (#23, 24, 29). The court construes defendants' submissions as a motion to file the documents under seal pursuant to the relevant administrative regulation or state law. The court finds that the documents were properly filed under seal and grants the motion. In the future, however, defendants are advised to bring a motion on shortened time to obtain an order by the court permitting defendants to file the documents under seal.

three weeks to receive requested books. *Id.* Defendants stated in a grievance response that due to plaintiff's status, he will not be permitted direct access to the law library and that plaintiff did not list any specific problems he had with getting legal materials. *Id*. at 13. Plaintiff may have raised some questions regarding whether he has meaningful access to legal materials. *See Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). However, the court must defer to prison officials regarding security concerns, *May v. Baldwin*, 109 F.3d 557, 564 (9th Cir. 1997), and at this stage of the litigation, plaintiff has not demonstrated a likelihood of success on the merits so as to warrant the extraordinary relief of a mandatory injunction. Similarly, out of deference to prison officials, at this point the court will not impose restrictions or conditions on how to conduct inmate searches. *Id*. Accordingly, injunctive relief with respect to removing plaintiff from austere housing is denied. The court also notes that it need not address plaintiff's request that he not be transferred from NNCC during this litigation because Warden Helling stated that plaintiff must remain at NNCC in order to receive dialysis (#15, Ex. E).

   **2. Deliberate indifference**

   Defendants correctly state that it is difficult to discern what injunctive relief plaintiff seeks with respect to his deliberate indifference claim (#1, 6). The crux of plaintiff's claim is that defendants acted with deliberate indifference to plaintiff's serious medical need by delaying treatment of plaintiff's central retinal vein occlusion, which led to plaintiff losing sight in his right eye (#6). Plaintiff requests several items that purportedly relate to his medical claims: a second mattress to ease a sensation of water in his lungs when he lies down, a lamp for his cell because he claims the lighting strains his eyes, and a clock in order to take his medications on time (#6, 7).

Defendants provide voluminous medical records that show that plaintiff has serious medical conditions, including diabetes and kidney failure, and has received extensive treatment (#15).[6] Regarding plaintiff's eye, he was seen by Dr. Fischer at the Nevada Eye Foundation on November 29, 2004 (#15, DEF 364). Dr. Fischer noted that plaintiff had a central retinal vein occlusion and recommended that plaintiff be referred to retinal specialists in Reno. *Id.* Plaintiff was referred to Nevada Eye Specialists the next day and the appointment was set for December 10, 2004. *Id.* Dr. Dhindsa of Nevada Eye Specialists examined plaintiff on December 10, 2004, noted that a treatment involving an injection was a possibility, but stated that he would prefer to see if plaintiff's condition resolved on its own (#15, DEF 380).

On July 1, 2005, plaintiff again complained that his eye felt as if it had sand in it (#15, DEF 401). On July 13, a request was made for further treatment for plaintiff's eye, *id.*, and on July 19, the NDOC UR panel approved a request to perform a fluorescein angiogram on plaintiff's eye. *See id.*, DEF 411-412. Dr. Fischer saw plaintiff on July 29, 2005 and recommended that plaintiff see a specialist as soon as possible. *Id.*, DEF 416. An appointment with Nevada Retinal Specialists was scheduled for August 15, 2005. *Id.* Plaintiff claims that defendant Bashor was deliberately indifferent to his serious medical need by refusing to transport plaintiff to the doctor (#1). Defendants provide evidence that two correctional officers reported that plaintiff swore at Bashor and then refused to go; plaintiff also signed a waiver that day

---

[6] In their opposition, defendants seek feedback regarding the large volume of medical records they provide (#15). The court advises that counsel would be well-served to endeavor to better separate the wheat from the chaff and determine whether select medical records may illustrate the comprehensive medical treatment plaintiff receives as effectively, if not more effectively, as providing over 500 pages for the court's review. Further, some evidence provided may not have been necessary at this stage of the litigation. For example, defendants include nearly 200 pages that purport to show that plaintiff's purchases of unhealthy food likely contribute to his serious health problems (#15, DEF 605-772). This evidence may be helpful in support of a dispositive motion; however, it appears unnecessary in the context of this motion for preliminary injunction, particularly when defendants provide extensive medical records to refute plaintiff's deliberate indifference claim.

13

acknowledging that he refused medical treatment (#15, DEF 521-25). Defendants posit that plaintiff was reluctant to submit to the risky medical procedure proposed.

First, it is unclear what injunctive relief could be provided to plaintiff because he already has suffered the alleged harm, blindness, which is irreparable. Second, defendants provide extensive medical records that indicate that plaintiff has received comprehensive medical care during his incarceration. Plaintiff suffers from serious conditions related to alcoholism, drug abuse, diabetes, kidney failure, and other illnesses or diseases. Plaintiff has not demonstrated that he would not have lost sight in his eye if he had gone to the particular eye appointment on August 15, 2006. Plaintiff has not shown any likelihood of success on the merits or raised serious questions about the merits.

Regarding the medically-related items that plaintiff requests, defendants provide the institutional procedure that governs austere housing. *Id*., DEF 786-797. The items that inmates are allowed to possess are strictly limited, and the court defers to NDOC officials on security and disciplinary policies. *May*, 109 F.3d at 564. Again, plaintiff has not demonstrated that the extraordinary remedy of injunctive relief is warranted in this case. Accordingly, injunctive relief with respect to plaintiff's deliberate indifference claim is denied.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated that a preliminary injunction is warranted with respect to any of his claims. As such, the court recommends that plaintiff's motion for temporary restraining order and/or preliminary injunction (#6) be DENIED.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice,

the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for temporary restraining order and/or preliminary injunction (#6) be **DENIED**.

**DATED:** July 5, 2006.

_____
**UNITED STATES MAGISTRATE JUDGE**