UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALBERT R. GARCIA, JR., ) | 3:06-cv-0118-JCM (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| NEVADA BOARD OF PAROLE ) | |
| COMMISSIONERS, *et al*., ) | February 6, 2008 |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable James C. Mahan, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants Nevada Board of Parole Commissioners, Salling, Morrow, Goodson, Bisbee, Vieth, Keeler, McGaffin, NDOC Psychological Review Panel, Stewart, Vogt, and Baca's motion for partial summary judgment (#88).  Plaintiff opposed (#101) and defendants replied (#115).  Plaintiff filed supplemental oppositions (#118 and #122) and defendants filed a supplemental reply (#123).[1]  The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for partial summary judgment (#88) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Albert R. Garcia, Jr. ("plaintiff"), a *pro se* prisoner, is currently incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at the Northern Nevada Correctional Center ("NNCC") (#67).  Plaintiff brings his second amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fifth, Eighth, and Fourteenth Amendment rights.  *Id*.  Plaintiff names as defendants The Nevada Board of Parole Commissioners ("Parole Board"); Dorla Salling, Parole Board Chairman; John C. Morrow, Thomas D. Goodson, Connie

---

[1] The court granted the parties leave to file supplemental pleadings (#120).

Bisbee, Mary Vieth, and Michael Keeler, Parole Board Commissioners; Patricia M. McGaffin and Mary Stewart, NNCC Caseworkers; The NDOC Psychological Review Panel ("Psych Panel"); A.T. Vogt, Psychologist; James Baca, Nevada State Prison Associate Warden; Kenneth Corzine, Travis Neighbors, Edmond Mason, and Michael Thalman, NNCC Correctional Officers; Don Helling, NNCC Warden; James Benedetti, NNCC Associate Warden; Danielle Iratcable, NNCC Caseworker; Rod Moore, NDOC Investigator; Jeffrey Wiley, NNCC Sergeant; James Welch, NNCC Lieutenant; Daniel Henson and Paul Lessard, NNCC Correctional Officers; Mary Babbs, NNCC Sergeant; Sean LaGier, NNCC Correctional Officer; William Curry, NNCC Law Librarian; Ted D'Amico, NDOC Medical Director; Joanne Williams, Terri Jacobs, and John Brown Pegry, NNCC Nurses; Michael Bashor, NNCC Correctional Officer; Sergeant Wagner and G. Moore, NNCC Sergeants; Damon Haycock, NNCC Administrative Officer; and Does 1-10. *Id*.

Defendants' motion for partial summary judgment pertains only to counts I and II (#88). In count I, plaintiff alleges that defendants Bisbee, Goodson, Salling, Morrow, and McGaffin, as members of the Parole Board, denied him due process in relation to a 2005 parole hearing (#67, pp. 4-4(b)).[2] In count II, plaintiff alleges that defendants Vogt, Baca and Doe I, as members of the Psych Panel, denied him due process by impermissibly revoking his 2002 certification, and by failing to certify him for release in 2005, which in turn, denied him the right to appear before the Parole Board for a parole hearing. *Id*. at 5-5(a).

The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

///
///
///

---

[2] The court utilizes plaintiff's page numbering when referencing his second amended complaint.

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

///

///

3

**B. Analysis**

**1. Defendants McGaffin and Stewart**

Plaintiff makes allegations against defendants McGaffin and Stewart in relation to their preparation of pre-parole hearing reports for the Parole Board, which plaintiff contends contained incorrect information (#67 at 4(b) and 5-5(a)). Defendants assert that the court dismissed claims against defendants McGaffin and Stewart in its initial screening order (#9). The court agrees. The court also dismissed defendant McGaffin in its screening order of plaintiff's first amended complaint (#37). To the extent that this court must technically re-dismiss these defendants from plaintiff's second amended complaint, it does so now based on the same reasoning as outlined in the court's previous screening orders (#9 and #37).

**2. Count I**

Counts I and II stem from the Parole Board's 2005 denial of plaintiff's parole request. In 1986, a Washoe County jury convicted plaintiff of sexual assault, and he was sentenced to eighteen years in prison (#67 at 4; #88, D-MSJ 0047, Case No. C86-316). In 1987, a Douglas County jury convicted plaintiff of kidnapping, and he was sentenced to eighteen years in prison, to be served consecutively to the sexual assault sentence (#67 at 4; #88, D-MSJ 0048-49, Case No. 17938). The two crimes originated out of the same January 26, 1986 events (#88, D-MSJ 0040, ¶11(c)). Plaintiff's conviction for sexual assault expired in 1997, and he is currently serving his sentence for kidnapping (#67 at 4; #88, D-MSJ 0040, ¶11(e)-(f)).

In count I, plaintiff alleges that by requiring him to obtain certification from the Psych Panel prior to his parole hearing, Parole Board defendants have violated Nevada law and plaintiff's due process rights (#67, pp. 4-4(b)). Plaintiff claims Nevada law does not require Psych Panel certification prior to being paroled on a charge of kidnapping. *Id*. Plaintiff alleges that in 1998, he wrote to then Parole Board Chairman Dennison, who informed plaintiff that he did not need to obtain a Psych Panel certification before being considered for parole for a kidnapping charge. *Id*. at p. 4. However, at plaintiff's 2002 parole hearing, defendant Morrow demanded that plaintiff obtain a Psych Panel certification before the Parole Board would hear his request. *Id*. Plaintiff alleges he received certification, but was denied parole. *Id*. Plaintiff claims

4

1   that the Parole Board again impermissibly required Psych Panel certification prior to plaintiff's
2   2005 parole hearing, despite the fact that plaintiff asserted that Nevada law does not require it,
3   and despite his 2002 certification, which plaintiff alleges was never revoked. *Id*.

4   The evidence reveals that the Parole Board did require plaintiff to be certified by the Psych
5   Panel in 2002, and that plaintiff was successful (#122, Exhibit P2; #88, D-MSJ 0055). Despite
6   this, the Parole Board denied plaintiff's parole request (#88, D-MSJ 0008, pp. 27-28). In 2005,
7   plaintiff was again up for parole (#88, D-MSJ 0041, ¶12). Defendants once more required
8   plaintiff to obtain certification from the Psych Panel before they would consider plaintiff's
9   request. *Id*. at ¶13. Defendants state that they made this request "so as to assist the Parole Board
10  in determining whether parole release should be granted." *Id*. This time, the Psych Panel denied
11  plaintiff certification (#122, Exhibit P3; #88, D-MSJ 0041, ¶14). Plaintiff testified that when he
12  arrived at his 2005 parole hearing, the caseworker informed him that he could leave because he
13  failed to obtain certification; therefore, he did not actually appear before the Parole Board (#88,
14  D-MSJ, p. 53). The Parole Board thereafter denied plaintiff's parole request (#88, D-MSJ 0043).
15  Plaintiff requested reconsideration of the Parole Board's decision, and the Board granted him a
16  second hearing (#88, D-MSJ 0041, ¶¶18-20 and D-MSJ 0044-45). On August 22, 2006, the
17  Parole Board again denied plaintiff's request for parole (#88, D-MSJ 0046).

18  The guarantees of the Fourteenth Amendment's Due Process Clause apply only when a
19  constitutionally-protected liberty interest is at stake. *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th
20  Cir. 1995). Liberty interests can arise both under the Constitution and from state law. *Wolff v.*
21  *McDonnell*, 418 U.S. 539, 557-58 (1974). The Supreme Court has held that "[t]here is no
22  constitutional right of a convicted person to be conditionally released before the expiration of a
23  valid sentence." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979). As for state-
24  created liberty interests, they are "generally limited to freedom from restraint which... impose[s]
25  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
26  *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Under Nevada law, the release of an inmate on
27  parole "is an act of grace of the state." NRS 213.10705. Thus, an inmate has no state-created
28  liberty interest in parole. Since plaintiff has no federal or state liberty interest in being paroled,

he has no right to certain procedures at a parole hearing.

The court further concludes that defendants did not violate Nevada law. In Nevada, parole is permitted by statute. When interpreting state statutes, federal courts are bound by a state court's interpretation of the law. *Gentry v. MacDougall*, 685 F.2d 322, 323 (9th Cir. 1982). Where a state supreme court has not addressed an issue, the federal court must apply the rule it believes that the state court would adopt if confronted with the same situation. *Federal Sav. and Loan Ins. Corp. v. Butler*, 904 F.2d 505, 510 (9th Cir. 1990). To do so, the federal court applies the state's settled principles of statutory construction. *Id*.

Nevada law states that "[w]hen 'the words of the statute have a definite and ordinary meaning, [courts] will not look beyond the plain meaning of the statute, unless it is clear that this meaning was not intended.'" *Harris Associates v. Clark County School Dist.*, 119 Nev. 638, 641-42 (2003) (citing *State v. Quinn*, 117 Nev. 709, 713 (2001)). If the statute is ambiguous, however, this rule is inapplicable and the "drafter's intent 'becomes the controlling factor in statutory construction.'" *Id*. at 642 (citing *Harvey v. Dist. Ct.*, 117 Nev. 754, 770 (2001)). Ambiguous statutory provisions should be interpreted according to "what reason and public policy would indicate the legislature intended." *Id*. (citations omitted). Statutes must be construed so as to give meaning to all parts and language, and the court must "read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation." *Id*. All parts must be rendered meaningful, and the interpretation should not produce an "unreasonable" or "absurd" result. *Id*.

The statute at issue is NRS 213.1214, which states:

> 1. The Board shall not release on parole a prisoner convicted of an offense listed in subsection 5 unless a panel consisting of:
>
> (a) The Administrator of the Division of Mental Health Developmental Services of the Department of Health and Human Services or his designee;
>
> (b) The Director of the Department of Corrections or his designee; and
>
> (c) A psychologist licensed to practice in this State or a psychiatrist licensed to practice medicine in this State,

6

> certifies that the prisoner was under observation while confined in an institution of the Department of Corrections and does not represent a high risk to reoffend based upon a currently accepted standard of assessment.
>
> 2. A prisoner who has been certified pursuant to subsection 1 and who returns for any reason to the custody of the Department of Corrections may not be paroled unless a panel recertifies him in the manner set forth in subsection 1.
>
> 3. The panel may revoke the certification of a prisoner certified pursuant to subsection 1 at any time.
>
> 4. This section does not create a right in any prisoner to be certified or to continue to be certified. No prisoner may bring a cause of action against the State, its political subdivisions, or the agencies, boards, commissions, departments, officers or employees of the State or its political subdivisions for not certifying a prisoner pursuant to this section or for refusing to place a prisoner before a panel for certification pursuant to the section.
>
> 5. The provisions of this section apply to a prisoner convicted of any of the following offenses:
>
>> (a) Sexual Assault pursuant to NRS 200.366. ... .

NRS 213.1214.

Since his sexual assault sentence expired, plaintiff has been serving his related kidnapping sentence. Kidnapping is not one of the listed offenses in section five. *Id*. Plaintiff contends that section one requires a Psych Panel certification only when an inmate is up for parole from serving a sentence for one of the crimes listed in section five (#101). Defendants' position is that the language of section one requires a Psych Panel certification every time an inmate who has historically been convicted of one of the crimes listed in section five is up for parole from serving a sentence on *any* criminal conviction (#88).

The plain language of section one does not specify *when* an inmate must have been convicted of an offense in section five, or whether section one only applies when an inmate is up for parole for one of the listed offenses in section five. Since the parties posit two reasonable interpretations of the statute, the language is ambiguous, and the court turns to the legislative intent behind the statute. *Harris*, 119 Nev. at 641.

While the Nevada Supreme Court has not addressed this particular issue, it recently

7

discussed the general intent behind NRS 213.1214. In *Stockmeier v. Psychological Review Panel*, 135 P.3d 807 (2006), the Court noted that the focus of the statute was "on protecting the community from sex offenders and providing adequate treatment and rehabilitation for sex offenders in prison." *Id*. at 812 (citing Legislative Counsel Bureau, *Treatment of Mentally Ill Offenders*, Bulletin No. 97-7, 69th Leg. (Nev., 1997)). The legislative history further revealed that by expanding the list of offenses that would trigger the certification requirement, the Legislature "sought to prevent recidivism and to protect the public when a sex offender is released into society." *Stockmeier*, 135 P.3d at 812. This court's review of Bulletin 97-7 indicates that the theme of "protecting the community," both when offenders are released from prison or when they move into the state, permeates the entire publication. *See generally* Bulletin No. 97-7.

NRS 213.1214(2) requires an inmate who was previously certified to be re-certified if the inmate returns to the prison system "for any reason." Defendants argue that the phrase "for any reason" implies that "there is no limit to the type of crime, however dissimilar it may appear to the crime of sexual assault, that would trigger the requirement" of re-certification upon return to the system (#88, p. 18). Defendants claim that since officials may subject an inmate who has returned to the system to the certification process, officials can certainly do so for those already in custody. The court agrees. Support for this position is found in other provisions in Chapter 213, which demonstrate that sex offenders are separated out for stricter requirements upon release, even if they have served their entire sentences and were not paroled. *See* NRS 213.1243 (requirement of lifetime supervision for sex offenders); *see also* NRS 213.1245 (mandatory conditions of parole in addition to general parole conditions solely applicable to sex offenders); *see also* NRS 213.1255 (special conditions for certain sex offenders). Sex offenders, once convicted, are subject to different restrictions than other offenders, potentially for the remainder of their lives. As such, the statutory provisions imply that sexual offenders are harder to rehabilitate, and need to be closely monitored. It makes sense that the intent of NRS 213.1214 is to subject any past sex offender to the certification requirement when under consideration for release on parole.

This is the most reasonable interpretation, and is especially true on the facts of this case.

1  There is merit to defendants' argument that plaintiff should not be allowed to avoid the
2  certification requirement based on the technicality that he served the sentence for his sexual
3  assault conviction prior to the sentence for his kidnapping conviction.  Important to this
4  conclusion is that the two convictions were based on the same set of events occurring on January
5  26, 1986.  Although the crimes were tried in different counties, it is not disputed that the
6  kidnapping is related to the events surrounding plaintiff's sexual assault conviction.  To allow the
7  plaintiff to avoid the certification requirement based on the fact that the kidnapping sentence was
8  served consecutively would render one of the main purposes of the statute – to assure that inmates
9  convicted of sexual offenses are held to a higher level of supervision – ineffective.  The court will
10 not construe a statute in a way that would render an "unreasonable" or "absurd" result.  *Harris*,
11 119 Nev. at 641-42.[3]

12       Plaintiff's second argument is that because he successfully sought certification in 2002,
13 he should not be required to obtain it again in 2005 (#101).  Plaintiff supports his argument by
14 citing the language of NRS 213.1214(2), which requires inmates re-entering the prison system
15 for any reason to be re-certified.  *Id*.  Plaintiff contends that this language implies that once
16 certified, inmates remain so until they leave the system.  *Id*.  Defendants' view is that the statute
17 does not limit the Parole Board from requiring a new certification each time an inmate is
18 considered for parole (#88).

19       The statute is clear that inmates have no right to initial certification or continued
20 certification.  NRS 213.1214(4).  Moreover, the Psych Panel may revoke the certification "at any
21 time."  NRS 213.1214(3).  What is unclear is whether once certified, a prisoner remains so unless
22 affirmative action is taken.  Since the statute is ambiguous and the court must look to its intent.

23       Section one requires that the Psych Panel certify an inmate based on "currently accepted
24 standards of assessment."  NRS 213.1214(1).  The reference to "current" standards implies that

---

[3] One of plaintiff's factual arguments is that in 1998, the former Parole Board chairman informed plaintiff that he did not need certification for his kidnapping sentence.  Plaintiff testified that he had copies of his letter to the chairman and the chairman's response (#88, D-MSJ 0006-7, pp. 21-22).  Plaintiff does not submit these letters for the court's review.  However, even if he had, the fact that the Chairman interpreted the statute in the same manner that plaintiff did is not dispositive of this issue.

9

1  the standards are subject to change.  This indicates that certifying a prisoner in the past does not
2  necessarily mean that the prisoner would still be certified according to the latest standards of
3  assessment.  Thus, an inmate's certification may need periodic review.  Further, the language in
4  section three that a certification may be revoked "at any time" also implies that the Psych Panel
5  has the discretion to change its decision freely, and therefore, should be able to review its decision
6  when asked or if it so chooses.  This interpretation is supported by the legislative intent, as set out
7  above, which clearly focuses on protecting the public by monitoring past sex offenders and
8  preventing recidivism.  Many things can change for a prisoner, for better or for worse, in the
9  intervening years between parole hearings.  Just because an inmate is certified does not mean an
10 inmate's certification cannot be reviewed or revisited at any time.  Thus, the Parole Board may
11 permissibly request that the Psych Panel review an inmate's certification.

12         Support for the Parole Board's right to request re-certification each time an inmate is
13 considered for parole is found generally in other sections of Chapter 213.  The provisions of
14 Chapter 213 do not put many limits, if any, on the type of information the Parole Board may seek
15 in making a parole decision.  *See* NRS 213.10885 (requiring the Board to consider certain
16 information, including past criminal history, but not limiting the information the Board may
17 consider); *see also* NRS 213.1089 (Board has power to subpoena witnesses and the production
18 of documents); *see also* NRS 213.1099 (requiring the Board to consider certain information,
19 including criminal history and victim documents and/or testimony, but not limiting the
20 information the Board may consider); *see also* NRS 213.130 (Board must consider prison
21 officials' report which includes "data that will assist the board in determining whether parole
22 should be granted," but placing no limits on the information the Board may consider).
23 Importantly, Chapter 213 allows the Parole Board wide latitude in implementing supervisory
24 authority over parolees, particularly sex offenders.  *See* NRS 213.12175, NRS 213.1243, and NRS
25 213.1245.  Finally, the Nevada Supreme Court has held since NRS 213.1214 "does not specify
26 or limit [the information] the Psych Panel may consider," the Panel is free to consider unproven
27 allegations of sex abuse because the Panel's purpose is to "ensure that prisoners ... no longer pose
28 a threat to society."  *Stockmeier*, 135 P.3d at 811.  Similarly, there are no provisions in Chapter

1  213 limiting the information the Parole Board may consider; thus, *Stockmeier* implies that the
2  Parole Board may consider any information as well.  Rather than put limits on the Parole Board's
3  power, these statutes provide the Parole Board with broad discretion to protect the public from
4  sex offenders.[4]

5  As to count I, the court concludes that NRS 213.1214 applies to prisoners who have past
6  convictions for those offenses listed in section five of that statute.  The court further concludes
7  that defendants did not violate Nevada's parole statutes or plaintiff's due process rights by
8  requiring plaintiff to obtain a new certification prior to his 2005 parole hearing.  Defendants'
9  motion for summary judgment as to count I is granted.

**3. Count II**

In count II, plaintiff alleges that the Psych Panel denied him due process by revoking his 2002 certification without informing him and by considering incorrect information when failing to certify him in 2005 (#67, pp. 5-5(a)).

Defendants first argue that the members of the Psych Panel are protected by immunity (#88).  NRS 213.1214(4) provides:

> This section does not create a right in any prisoner to be certified or to continue to be certified.  No prisoner may bring a cause of action against the State, its political subdivisions, or the agencies, boards, commissions, departments, officers or employees of the State or its political subdivisions for not certifying a prisoner pursuant to this section or for refusing to place a prisoner before a panel for certification pursuant to the section.

*Id.*  In *Stockmeier*, the Nevada Supreme Court stated:

> The statutory language is unambiguous and clearly prohibits two causes of action, one for the Psych Panel's failure to certify a prisoner, and one for refusing to consider a prisoner for certification.  Nowhere in the statute does it prohibit causes of action regarding the process of conducting the hearing or the statute's validity.

135 P.3d at 810.  In *Stockmeier*, the plaintiff contested the notice he received before the hearing

---

[4] Plaintiff disputes that he had prior sex offense convictions in California in the 1970s (#101).  However, plaintiff provides nothing to support this claim.  Moreover, this dispute of fact is not material to whether the Parole Board violated his due process by requiring him to be certified prior to his parole hearing.

11

and the procedure the Psych Panel followed during the hearing, and the court allowed the claim to proceed. *Id.*

In his deposition, plaintiff testified that the only count II defendants are defendants Vogt, Baca and Doe I in relation to their actions as Psych Panel members (#88, D-MSJ 0017, p. 45, 65). He testified that defendant Vogt told plaintiff that defendant Vogt had revoked plaintiff's 2002 certification. *Id.* at p. 60-61. Plaintiff testified that part of his count II allegation was that he had a due process right to notice and an opportunity to respond to a revocation of a prior Psych Panel certification. *Id.* at p. 61. Plaintiff stated, "But if [Vogt] does something, I think I am entitled to know before he does it. I need to be able to defend myself against any decertification." *Id.*

Taking as true that defendant Vogt actually did de-certify plaintiff without notice or an opportunity to be heard, the court concludes this claim is impermissible under the statute. Clearly, section four prohibits such a suit. *See* NRS 213.1214(4) ("This section does not create a right in any prisoner to be certified or to continue to be certified."); *see also* NRS 213.1214(3) ("The panel may revoke the certification of a prisoner ... at any time.").[5]

Plaintiff also challenges the information the Psych Panel reviewed in 2005 when it failed to certify him. This claim challenges the procedures used by the Psych Panel, and is, therefore, a permissible claim. *Stockmeier*, 135 P.3d at 810. Plaintiff argues that the Psych Panel conducted its review based on plaintiff's sexual assault conviction, case number 86316, rather than his kidnap conviction. The Psych Panel's task is to determine whether inmates are properly rehabilitated so as to be released on parole. The *Stockmeier* court held that "NRS 213.1214 does not specify or limit what the Psych Panel may consider." *Id.* at 811. The Psych Panel may even consider unproven allegations against the inmate. *Id.* Thus, the Psych Panel's consideration of plaintiff's sexual assault conviction was proper, especially considering that it was directly related to his kidnapping conviction.

---

[5] Plaintiff was certified in 2002 (#122, Exhibit P2; #88, D-MSJ 0055, responses 3 and 10). The parties submit conflicting evidence regarding whether plaintiff's 2002 certification was ever revoked (# 88, D-MSJ 0016, pp. 60-61; #88, D-MSJ 0055, response 11). However, this factual dispute is irrelevant because defendants have immunity from suit for such a cause of action.

12

Plaintiff also testified in his deposition in relation to count II that because he did not pass the Psych Panel, he was not given an opportunity to appear before the Parole Board with respect to his first hearing in 2005 (#88, D-MSJ 0015, p. 53-54). Plaintiff alleges in count II of his complaint that he was denied due process at his second hearing in 2006 because he had not been certified by the Psych Panel (#67, p. 5(a)). These allegations are not relevant to plaintiff's count II claims against defendants Vogt, Baca and Doe I as members of the Psych Panel; instead, the allegations relate to Parole Board decisions and procedures. Plaintiff did not name Parole Board members in count II. However, even if the court liberally construes these allegations as part of count I, the court has already concluded that plaintiff has no liberty interest in receiving parole and that Nevada law permits the Parole Board to require certification for conviction for past sexual offenses before the Board will hold a hearing. The grant of parole is an "act of grace" by the state; thus, plaintiff has no *right* to a parole hearing or to appear before the Parole Board. Finally, even if he did have a right to a hearing, the undisputed evidence reveals that the Parole Board considered his parole request twice, and did not base its denials simply on plaintiff's lack of certification from the Psych Panel, but on "a number of different reasons" (#88, D-MSJ 0055).

The court concludes that defendants are immune from suit, and that the Psych Panel properly considered plaintiff's sexual assault conviction. Defendants' motion for summary judgment as to count II is granted.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1. Defendants McGaffin and Stewart are dismissed pursuant to the court's previous screening orders (#9 and #37);

2. Plaintiff has no constitutional liberty interest in receiving parole; therefore, he is owed no procedural due process at a parole hearing;

3. Parole is an "act of grace" by the state of Nevada; therefore, plaintiff has no right to a parole hearing under state law;

4. NRS 213.1214 permits the Parole Board to request an inmate historically convicted of a sex offense to obtain certification from the Psych Panel prior to granting a parole hearing;

5. The Parole Board did not violate Nevada law in requiring plaintiff to be certified in 2005 even though he was previously certified in 2002;

13

    6. Defendants Vogt, Baca and Doe I, as members of the Psych Panel, are immune from plaintiff' claims that the Psych Panel could not revoke his 2002 certification without notice and an opportunity to be heard; and

    7. The Psych Panel properly considered plaintiff's sexual assault conviction.

As such, the court recommends defendants' motion for partial summary judgment (#88) be **GRANTED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for partial summary judgment (#88) be **GRANTED**.

**DATED:** February 6, 2008.

*Valerie P. Cooke*

**UNITED STATES MAGISTRATE JUDGE**